# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ] | |
| ] | |
| v. ] | No. 3:22-CR-00327-6 |
| ] | JUDGE TRAUGER |
| [6] PAUL VAUGHN ] | |

## DEFENDANT PAUL VAUGHN'S SENTENCING MEMORANDUM

Defendant Paul Vaughn, by and through counsel, submits this sentencing memorandum in support of his request for a sentence of probation.

## INTRODUCTION

Mr. Vaughn is not an activist. He is instead a loving husband, father, grandfather, and businessman deeply committed to serving his community. As reflected in the numerous letters from family, friends, colleagues and others whose lives have been impacted by his positive role model and selfless actions, Mr. Vaughn is an integral member of his community who does not belong in jail.

For the reasons set forth in greater detail below, we request a sentence of probation because we believe it to be "sufficient, but not greater than necessary" to achieve the purposes of sentencing set forth in 18 U.S.C. § 3553(a). Mr. Vaughn's sentencing guideline range, as calculated by the Probation Officer, is 15 to 21 months. However, Mr. Vaughn suggests that the Probation Officer improperly included a victim related adjustment because the offense involved a "vulnerable victim." The Government supports Probation's finding, relying solely upon the case of *United States v. Handy*, which is plainly distinguishable on the facts and, we suggest, mistaken on the law. As shown below and in Mr. Vaughn's Position Regarding Presentence Report (D.E. 617,

incorporated herein by reference), Probation Officer erred in so finding. The proper sentencing guideline range, Mr. Vaughn suggests, is 10 to 16 months.

In any event, this is a case where the Guidelines themselves should be discarded since they fail to take into account Mr. Vaughn's unique circumstances, personal characteristics, and the extraordinary degree of support he enjoys from his community. The defense suggests that pursuant to all of the 18 U.S.C. 3553(a) factors, a sentence of probation would be appropriate in this case.

## I. FACTUAL BACKGROUND

### A. Paul Vaughn's Upbringing and Family Background.

Mr. Vaughn was born on was born on April 20, 1967, in Tampa, Florida, to Kay Vaughn and Cherry Houston. PSR at ¶ 45. His parents were not married at the time, but later married when he was two years old. His family moved to Malvern, Arkansas shortly after his birth and he lived there until he was in the fifth grade, at which time they relocated to Sacramento, California. They also lived in Madisonville, Kentucky, before returning to Malvern, where Mr. Vaughn graduated from high school. *Id.* at ¶ 47.

Mr. Vaughn had an "absolutely normal childhood with close friends," according to his mother. *Id.* at ¶ 46. He was independent and well-rounded. Mr. Vaughn's parents divorced in or about 1980 or 1981, however, when Mr. Vaughn was a teenager. *Id.* at ¶ 45. After his parents divorced, Mr. Vaughn lived with his father for a time and had a hard time adjusting.

His father, who operated a heavy equipment business and did some real estate renovations, passed away some twenty years ago at the age of 57 from a heart attack. *Id.* His mother, who is now 76, resides in Savannah, Tennessee. *Id.* Mr. Vaughn is the oldest of four children born to his parents. His sister, Lorrie Vaughn Wilbanks, lives in Savannah. His brother, Paxton Vaughn, lives in Reno, Nevada. *Id.* Mr. Vaughn's other brother, Starr, passed away on February 21, 2023, at the

2

age of 40. Mr. Vaughn's paternal half-sister, Amber Vaughn, lives in Texas. *Id*.

**B.     Mr. Vaughn's Marriage, Children, and Ministry.**

After graduating from high school, Mr. Vaughn joined the Navy in 1985 and served for over four years. *Id*. at ¶ 47. He spent the 1990s in Texas, living in Arlington, Dallas, and Waco. *Id*. In 1994, Mr. Vaughn married Bethany Hall Vaughn. Id. at ¶ 48. They met while doing pro-life ministry. *Id*. In December 1999, Mr. Vaughn and his family relocated to Middle Tennessee. He lived in Murfreesboro, Brentwood, Fairview, and finally Centerville, where he currently resides. *Id*.

Mr. Vaughn and his wife have eleven children: Pierce (age 28), Mariah (25), Patrick (23), Patterson (21), Eva (19), Annabelle (18), Providence (16), Mercy (13), Pascal (12), and Eden (3). Id. at ¶ 48. Their eldest children are all married and all live in Hickman County. They all have children of their own except for Patterson, who was only recently married. *Id*. Mr. and Mrs. Vaughn have eleven grandchildren and continue to homeschool their five youngest children. *Id*.

Mr. Vaughn serves as the founder and president of Personhood Tennessee, which is dedicated to "the non-violent advancement of the recognition and protection of the God-given, inalienable right to life of all innocent human beings as legal persons at every stage of their biological development." *Id*. at ¶ 49. Mr. Vaughn developed the curriculum used in sidewalk counseling at abortion clinics, which has seen over one hundred babies saved. *Id*.

Mr. Vaughn and his family attend the Heritage Presbyterian Church in Centerville, Tennessee, where they have been faithful members since 2010. *Id*. at ¶ 50. He is in good health, with no history of mental or emotional problems. *Id*. at ¶¶ 51, 52. Something that occurred while Mr. Vaughn was in the Navy, however, was mentioned by his mother: he was supposed to be part of a training flight mission on a helicopter but traded spots with another serviceman. The helicopter

crashed due to the weather, and everyone on the flight died. *Id*. at ¶ 52.

### C. Mr. Vaughn's Employment History.

Since moving to Tennessee, Mr. Vaughn has worked as a part-time packer at LifeWay and as a Quality Insurance Specialist at ImpactHealth in Nashville, as a Data Warehouse Developer at Healthways in Franklin, Tennessee, and as an IT Director at W Squared in Brentwood before founding and co-owning Tennessee Wireless, LLC in Centerville, where he provides internet service to his rural community. *Id*. at ¶ 57.

### D. Mr. Vaughn's Arrest.

In the early morning hours of October 5, 2022, some nineteen months after the events of March 5, 2021, Mr. Vaughn – who was not arrested or even cited on March 5, 2021 -- was arrested at gunpoint in front of his wife and children for the present offense. *See* Mia Cathell, "EXCLUSIVE VIDEO: Armed FBI Agents Arrest Pro-Life Leader in Front of His Children," Townhall Media Oct. 7, 2022 (available online at https://townhall.com/tipsheet/miacathell/2022/10/07/pro-life-leader-paul-vaughn-fbi-raid-n2614138).

As for the offense itself, on March 5, 2021, Mr. Vaughn was present outside the Carafem Health Center in Mt. Juliet, Tennessee where a so-called "rescue" involving a peaceful, nonviolent sit-in intended to prevent abortions took place. Mr. Vaughn did not personally obstruct or interfere with any patients, but instead engaged in discussions with the police on site and communicated between the police and the peaceful demonstrators. *See generally* PSR ¶¶ 3-4.

On October 3, 2022, a federal grand jury for the United States District Court for the Middle District of Tennessee returned a two-count Indictment, charging Mr. Vaughn and his co-defendants with Conspiracy Against Rights and Freedom of Access to Clinic Entrances Act. *Id*. at

4

¶ 1.

On January 30, 2024, Mr. Vaughn was found guilty by a jury trial as to both Counts of the Indictment. *Id*. at ¶ 5.

### E. Mr. Vaughn is an Integral Part of His Community.

Mr. Vaughn's life has been characterized by love and sacrifice for others. He moved to rural Hickman County, Tennessee several years ago with the express purpose of investing in the community. His good character is praised by all; his servant leadership in Hickman County would be sorely missed if he were incarcerated; his family has been a blessing to many, and his wife and young children desperately need him at home; and his caring for others would leave a gaping hole in the community.

### 1. Mr. Vaughn is a pillar in his community.

Just as Mr. Vaughn moved to Hickman County in order to pour himself into the community, so he is the reason Bruce Howard moved his family there, too, to "cultivate healthier, stronger families and greater community involvement." *See* Exhibit A. Dr. Howard has known Mr. Vaughn for fifteen years. He states that Mr. Vaughn has shown himself to be "one of the kindest, most generous, most caring, most upright people" Dr. Howard knows. *Ibid*. Dr. Howard also admires Mr. Vaughn's family. He writes that "[e]ach child is the kind of child parents want – respectful, self-confident, studious, inquisitive, cheerful, and heavily involved in community affairs." *Id*. Dr. Howard also comments on how Mr. Vaughn has given back to the community through his business: "Through his business Tennessee Wireless, many people who would have been cutoff from the world were able to get Internet over that 'last mile' that was inaccessible via modem, DSL, or fiber. Paul was able to combine his passion for giving to the community with a business that allowed him to be in the community interfacing with people and doing what he could to meet

5

their needs." *Id*. The community needs Mr. Vaughn, according to Dr. Howard. "Without him at the helm of his business, [people in our impoverished community] could be endangered." *Id*. Dr. Howard urges leniency for Mr. Vaughn because "I think if you knew Paul, you would know that he is not the kind of person who should be in prison. He is a model for others to follow. In fact, I have such a high degree of admiration for him that I want to model my own life after his example."

Dr. Howard is not alone in this assessment of Mr. Vaughn's character. Deborah Blick, who attends church with him considers him "one of the kindest, empathetic and wisest men" she knows. *See* Exhibit B. Ms. Blick refers to the "fine and rare character" of Mr. Vaughn. *Id*. Like Dr. Howard, Ms. Blick and her husband relocated to Middle Tennessee three and a half years ago, and through mutual community and church have had "many opportunities to become acquainted with" Mr. Vaughn and his family. *Id*. She says Mr. Vaughn "listens caringly when you speak to him, giving his undivided attention to you and your message." She also describes him as "always calm and controlled in his speech in instances when others are not." *Id*. She further states that Mr. Vaughn "always stands for justice in every circumstance, for every person. You can always count on Paul, the great peacemaker." *Id*.

Ms. Blick also observes that Mr. Vaughn is "a devoted husband and father" always "willing to sacrifice because of his love for his wife, children and grandchildren." *Id*. But Mr. Vaughn's love and compassion does not stop there: "This empathy also pours out to others that he comes in contact throughout the community and beyond. Such a valuable, wise and humble asset to so many. Our community and society are so fortunate to have this person's character and influence for good among us." *Id*. Ms. Blick says that Mr. Vaughn is "a great asset to society" and is a "peaceful, wise and servant-hearted person" who is "rare in our times." *Id*.

Similarly, Ethan Post has known Mr. Vaughn for twelve years and considers him a good

friend. *See* Exhibit C. He has seen Mr. Vaughn "as a father, a husband, a businessman, and of course a friend." Like Ms. Blick, Mr. Post sees Mr. Vaughn as "a man of peace and a peace maker at heart. He is a man who I have seen on more than one occasion building bridges between groups who have very little in common." *Id*. He states further that Mr. Vaughn "is kind" and "the sort of man who stops and talks to those who no one else talks to." Mr. Post says that in many ways Mr. Vaughn is not like Mr. Post. "If I served time in prison, I [ ] know my family would miss me, but [am] not so sure beyond my closest circles." *Id*. But in Mr. Vaughn's case, "[m]any souls beyond the reach of his family and church would be impacted. The man who is often seen walking with a limp by the side of a road, a man who most pass by, would miss Paul because Paul does not pass him by." *Id*. That is, Mr. Vaughn's "freedom means something to a lot of people in our community." He should not be imprisoned, for the good of the community.

State Representative Jody Barrett shares this high view of Mr. Vaughn. He has known Mr. Vaughn "for quite some time," and says Mr. Vaughn "has been a solid member of the district" he represents. *See* Exhibit E. Representative Barrett has "never doubted for a moment [Mr. Vaughn's] love for people and community." *Id*. It is that love, Rep. Barrett writes, that leads Mr. Vaughn to fight for the lives of the unborn. "Through the act of gentle counseling and speaking truth in grace, Mr. Vaughn has been able to aid mothers in making the decision to choose life." *Id*. Rep. Barrett attests to Mr. Vaughn's character as being "one of great strength and conviction." *Id*. Rep. Barrett concludes that "Mr. Vaughn is a pillar to his family, a beacon to his circle of relations, and a friend to every stranger. You do not often come in contact with people such as this." *Id*.

Similarly, State Senator Kerry Roberts, who serves as Chairman of the Senate Committee for Government Operations states that "Paul is passionate in his love for others." *See* Exhibit F. It is that love which leads Mr. Vaughn to "helping countless women choose life." Senator Roberts

7

has "never known Paul to act with contempt or maliciousness." *Id*. He observes that Mr. Vaughn has a "record as an exemplary citizen" and plays an important "role as a husband, father, and friend to many in our community." *Id*.

Yet another friend and member of the community, Professor Scott Guelcher, vouches for Mr. Vaughn's character. *See* Exhibit R. Mr. Guelcher, a Professor of Chemical and Biomolecular Engineering at Vanderbilt University, has known Mr. Vaughn since 2007. *Id*. He writes: "Since I have known him, Paul has shown exceptionally strong character and commitment to his family, church, and community." *Id*. Professor Guelcher further indicates that he and Mr. Vaughn together founded the Centerville Community Orchestra in summer 2021. *Id*. Mr. Vaughn "has been a mentor and a friend" for several years. *Id*. Mr. Vaughn encouraged Professor Guelcher to move the orchestra from their church to the high school "to more broadly impact our county." *Id*. He adds: "Paul's dedication to improving our local rural community has impressed and inspired me over the past several years." *Id*. Professor Guelcher requests leniency for Mr. Vaughn because he "is a leader who would be sorely missed by his family, church, and community if sentenced to prison. He is also a close friend whose absence would be difficult for me to bear personally." *Id*.

### 2. Mr. Vaughn's family is an asset to the community and needs him.

Emma Howard is a senior leader, product manager, and e-commerce department leader at a multimillion-dollar manufacturing and e-commerce retailer in Hickman County which has become one of the largest employers in the area. *See* Exhibit D. She writes, "Paul Vaughn is the reason I now live and work in Tennessee." *Id*. Ms. Howard adds that Mr. Vaughn has "particularly impacted" her "deeply with his compassion." She is close friends with Mr. Vaughn's grown children, and states that "[h]e has raised kind sons and fearless daughters." *Id*. Ms. Howard further notes that Mr. Vaughn's family are "people of exemplary character, thoughtful, and hardworking."

8

*Id*.

Ms. Howard also notes Mr. Vaughn's invaluable contributions to their community. "Hickman County has been economically depressed for generations. Paul is dedicated to bringing value to the county through essential infrastructure with his wireless internet business, while also gathering people from the county to discuss future plans for the county's long term growth and stability. Real change is happening, and much of it can be traced back to the dedicated work and meaningful conversations that Paul has quietly, faithfully accomplished over the past few decades in his community." *Id*. Ms. Howard attends church with Mr. Vaughn, and states that "[w]hen an ice or electrical storm created internet outages on the towers his family business managed, Paul and his sons would quietly leave the Sunday worship serv ice to ensure that people had the internet connection they were counting on." *Id*.

Ms. Howard relates specific instances of the compassion Mr. Vaughn and his family have shown: "When my family was very ill during flu season, his EMT son, Pierce, drove over on his own time late in the evening to check on us. When a member of our church met a young single mother in need in downtown Nashville, Paul 's wife, Bethany, quickly got involved to support her with resources, care, and a friend." *Id*. In a nutshell, "Paul's impact on his community personally and through his family is immeasurable." *Id*. Ms. Howard closes her letter with this:

> His family, his church, and Hickman County at large will feel the impact of the loss of his presence through any extensive prison sentencing. His youngest daughter is only a few years old and needs her father. His wife needs his love and care; prison would make her life like that of a widow. His adult children need his wisdom. His young adult children need his support as they look at high school classes, colleges. His grandchildren need their grandad to tell them stories. His church needs the example of his character to mode l. Paul Vaughn is a pillar in our small, struggling community and we need him. Please consider the deep impact his sentencing will have on the lives of all those he has so richly benefitted.

Mr. Vaughn's pastor, Marion Lovett, states that Mr. Vaughn is "an honorable man with a

godly family that contributes significantly in positive ways to the betterment of our society in which we live." *See* Exhibit G.

### 3. Mr. Vaughn's exemplary character is needed in his community.

Claire Hall, who is married to Mr. Vaughn's wife's brother, has known Mr. Vaughn very well for many years, has seen him interact as a son, a brother, a father, a husband, a friend, a church member, a business owner, and a community member. *See* Exhibit H. Ms. Hall writes: "Paul has consistently shown himself to not be just a good man and member of society but in fact an excellent one. . . . Scarcely would you find a person with more kindness, grace, patience, and good humor. He is the kind of man who has never met a stranger and always leaves the other person smiling." *Id*. "The thought of him being separated from his beautiful family is unbearable." He and his wife have raised "the most incredible children." He is an "ongoing blessing to his community and should remain in it." *Id*.

Ms. Hall grew up in a different country and in a different culture. She often differs with Mr. Vaughn on the issues. Nonetheless, "[i]n our disagreements, Paul has consistently been extremely kind and gracious, always in good humor, careful to lighten the mood in the room when needed with a well placed (sic) joke and smile." *Id*. "Never one to force his opinions on others, Paul is always willing to set aside his pride to instead show sincere love and grace to those around him." *Id*. In short, he is the kind of man who should be allowed to continue giving himself to his community, not locked away where he can no longer be of help to so many who desperately need him.

Gualberto Garcia Jones, General Counsel to National Personhood Alliance, concurs in the uniform opinion that Mr. Vaughn's character is exemplary. *See* Exhibit I. Having known Mr. Vaughn for many years through his pro-life work as President of Personhood Tennessee, Mr.

10

Garcia Jones affirms that Mr. Vaughn is "of the highest moral character." *Id*. As an affiliate of National Personhood Alliance, Mr. Vaughn must commit to "non-violent advocacy." *Id*. at 2-3) (containing copy of Personhood Alliance Charter for Affiliate Membership signed by Mr. Vaughn). Mr. Garcia Jones states that Mr. Vaughn "has never encouraged or incited any form of violence" but has instead "been a voice for a loving and peaceful approach to pro-life advocacy." *Id*. And of course, the events of March 5, 2021, were entirely peaceful and non-violent. Mr. Garcia Jones further observes that Mr. Vaughn's pro-life ministry involves much more than attempting to counsel abortion-minded women to choose life; he is also involved in the adoption community, helps pregnant women in need, and also works to "combat the scourge of human trafficking." *Id*.

Cherry Houston, Mr. Vaughn's mother, echoes the high praise of these others who took the time and trouble to write this Court. *See* Exhibit J. She says that Mr. Vaughn "has never been a violent man." In fact, she has "never heard him raise his voice in anger." *Id*. Ms. Houston also sheds light on why Mr. Vaughn was at carafem that day in 2021: "his plan was specifically to not violate any laws" because his "eleventh child was due to be born." *Id*. Mr. Vaughn was there "to pray and support the sidewalk counselors, the same thing he had been doing for nearly twenty years, with no violence, no arrests, no blockades and no intimidation." *Id*.

Mrs. Houston provides specific examples of Mr. Vaughn's sacrificial help of others:

When my youngest son died last year, Paul was there. He helped me with funeral arrangements, burial plot, retrieving belongings and all that a death entails.

When his sister went through a painful divorce, Paul was there. He provided housing for her as well as providing counsel and a positive male role model for her children.

When his community was working to restore the down town area, Paul was there. He bought and renovated a building on the town square, moved his office there and assisted with plans to reroute traffic. He also helped secure the town's county music icon.

*Id.* He has "always been honest, hardworking, established in integrity and utterly unselfish." Mr. Vaughn's business now serves at least five counties, providing "needed service . . . as well as jobs." *Id.* Ms. Houston concludes: "You see, we know Paul to be a good man, kind, honest, upright and lawful." *Id.*

Another friend and community member, Victoria Lemmon, has known Mr. Vaughn for ten years. *See* Exhibit K. Like so many others, Ms. Lemmon states that Mr. Vaughn is "an upstanding and integral part of our community." He is also "a friend who has tirelessly worked to bring internet service to our very poor, rural county." *Id.* She and her family have had "much close fellowship" with Mr. Vaughn and his family as fellow church, choir, and orchestra members, as well as customers of his business. Their families have even schooled and vacationed together. *Id.* Based on her extensive experience with Mr. Vaughn, she emphatically states: "We know Paul to be a gentle, honest, service-oriented man, who would leave a huge hole in our community were he to be taken from it." *Id.*

Ms. Lemmon's own background adds additional weight to her observations, because she was "raised in a tumultuous home" and is "not comfortable around men in the least." *Id.* She sees gentleness as "the epitome of love," and Mr. Vaughn "exudes gentleness toward everyone I have seen him interact with, even in the context of debating differing viewpoints." His entire family is "characterized by love and gentleness." *Id.*

Phillip and Trish Lingo have known Mr. Vaughn even longer, for some twenty years. *See* Exhibit L. They have attended church with him for fifteen years. They are "dear friends" with Mr. Vaughn's whole family. *Id.* They are also customers of Mr. Vaughn's internet business. *Id.* They write that Mr. Vaughn is "one of the most joyful men" they know. But he "also takes important matters very seriously." *Id.* They further state that Mr. Vaughn "genuinely cares about what others

12

have to say," and that he is "kind, understanding, and fair with everyone." *Id*. They have "never heard him speak an unkind or untrue word as long as" they've known him. Their high opinion of him is not an isolated or unusual one; rather, Mr. Vaughn is "known in the community as an upright citizen who looks to the welfare of others." *Id*.

Mr. and Mrs. Lingo suggest that "the truest measure of a man's character is most clearly seen in his children." *Id*. "Paul's children are some of the most joyful, enthusiastic, friendly, well-adjusted, respectful, hard-working young people" they know. "Every one of the Vaughn children are an asset to our community and a joy to know. . . . We truly need Paul in our community." *Id*.

Tina Howard has known and been friends with Mr. Vaughn and his family for fifteen years. *See* Exhibit M. She states that Mr. Vaughn and his wife "have raised an amazing family which alone should speak to his character." *Id*. She remembers "being at his daughter's wedding last year and when the doors at the back opened and he was standing there with his daughter, both smiling ear to ear, I prayed and prayed that he would be able to walk his other daughters down the aisle at their weddings." *Id*. Ms. Howard was present in court for the trial. She writes that she "often wondered if the person the prosecution was describing was the same Paul that I have known for 15 years. The Paul I know is genuine, hard-working, thoughtful, generous, kind, and a man of integrity." *Id*.

Ms. Howard also attests to Mr. Vaughn's sacrificial service to the community: "I have also watched Paul purposefully meet the needs of his community by building a business that provides local internet service one rural house at a time - not an easy task. As a nurse and a current nurse practitioner student who hopes one day to serve the health needs of our local, rural community, Paul is one of the people I will turn to for insight into the needs of the county." *Id*. Ms. Howard joins the chorus of those asking this Court for leniency in Mr. Vaughn's sentence, because "Paul

13

is a pillar of our community and his absence would greatly impact his family, his church family, and his entire community." *Id*.

Phyllis Hall, a widow of twelve years, the mother of five, grandmother of twenty-eight, and great-grandmother of nine, was the first one in her family to graduate from university with two different degrees. *See* Exhibit N. Mr. Vaughn married her only daughter, so it is only natural that she would be particularly observant of Mr. Vaughn and his character. Ms. Hall states that Mr. Vaughn and her daughter Bethany will celebrate thirty years of marriage this year. *Id*. "During these years Paul has loved and provided for my daughter and their eleven children with all the financial, material, educational, duties of a good husband and father. I see him support the emotional aspects of loving and teaching his children to love God, family, and country." *Id*. She says that Mr. Vaughn "is not afraid to change the baby's diapers or clothes when needed. I have seen him up in the middle of the night helping with a sick child. He drives the children to school most mornings on his way to work. I have seen him hold the youngest in his lap reading that favorite storybook." *Id*.

Ms. Hall also notes that as "the tech expert" Mr. Vaughn "teaches the first computer lessons to those curious minds wanting to pound on his keyboard. He loves his children and loves my daughter with all his heart, and everyone can see their shared love." *Id*. She states that Mr. Vaughn "lives what he believes, a trait hard to find in this chaotic world." *Id*.

Ms. Hall relates a personal account of how Mr. Vaughn went out of his way to be a loving son-in-law: "When my husband, David, was battling cancer in 2011, Paul helped take care of him, and served our family in any way needed during that unexpected sickness. During all those difficult arduous days I am grateful my son-in-law Paul stood with me. I have learned these past twelve years of being a widow that I have a beautiful family who cares for me and loves me always. I am

14

blessed to have Paul, caring for our family, and loving our family." *Id.*

Ms. Hall is but one of many with personal accounts of how Mr. Vaughn has gone out of his way to assist others. Lorrie Wilbanks is Mr. Vaughn's sister. *See* Exhibit O. She says that Mr. Vaughn "has always looked out for me and has been a rock for me most of my life. When we were children, Paul was my protector against bullies in school." *Id.* But as an adult, Ms. Wilbanks writes, Mr. Vaughn

> was not merely a protector, he became a provider, counselor, and friend during a time when my life was falling apart. I found myself going through a divorce with nowhere to go. Paul took me in and gave me a home to live in which allowed me to have a safe place to raise my children free from financial worries. Through the years that followed, Paul gave of himself, his finances, his time, and his home so I could be the mother my children needed me to be. I would not be the person I am today without the help and support that I received from him, during that difficult time.

*Id.* Ms. Wilbanks states that even now, Mr. Vaughn "continues to be there not just for his immediate family, but for his extended family as well. His help, support, and shoulder to cry on during the loss of our youngest brother last year was indispensable. It would have been extremely difficult for me and our mother to get through that sudden loss without him. For my mother's sake I would ask that another son not be taken away from her." *Id.* Ms. Wilbanks has also observed Mr. Vaughn as a businessman for the past thirteen years. "During that time, I have witnessed him to be a man with impeccable character in every area of his life. Paul is kind and shows genuine compassion to everyone. He walks out his faith with honor and conviction."

Ms. Wilbanks summarizes her assessment of Mr. Vaughn: "Paul Vaughn is truly the most selfless person I know, a pillar of his community and an asset to the world around him. It would be a shame to lock someone like him behind bars." *Id.*

Monte and Evangeline Wolford have been friends with Mr. Vaughn for fifteen years. *See*

15

Exhibit P. They, too, attest to his good character. "We know him to be of high moral character, unassuming, and full of good humor. He is guided through life by love of family, deeply rooted convictions, and dedication to his community." *Id*. Likewise, they reiterate what a good father he has been and how his children have influenced their community: "Their friendship and influence has played a large role in our own children's lives and our family is better off for it. Our eldest son became a firefighter and is pursuing EMT training, following in the footsteps of one of Paul's sons, with whom he is close friends. Involvement in the fire department and EMS is just one example of how Paul has raised his children to value service to their community." *Id*.

The Wolfords also know Mr. Vaughn as a businessman and a boss. "For many years his business was the only way to get reliable internet in our area and through the services he provided he made a large impact in our county. His business has also provided jobs to many young people as they first enter the workforce, including to our own son. Paul is a boss who genuinely looks out for the best interest of his employees and having such a supportive environment at his first job was an invaluable and confidence building experience for our son." *Id*. They also add a particular instance of Mr. Vaughn's kindness and care for the least in their community: they "remember one instance in which they [Mr. Vaughn and his wife] rallied the community to throw a baby shower for an expecting mom who was struggling financially, even though they had only briefly met her and she lived over an hour away." *Id*.

The Wolfords, like so many others, ask this Court not to sentence Mr. Vaughn to prison. Mr. Vaughn "is a man of integrity and an asset to his community. If his shoes were left empty, they would be very hard to fill. All those who know him, not to mention his wife and children, would be deeply affected by his absence." *Id*.

Finally, Mr. Vaughn's son, Peyton, and daughter-in-law, Kenan, have submitted letters of

16

support. *See* Exhibit Q. Kenan Vaughn writes that Mr. Vaughn is "a kind and generous man, living for others and the betterment of the community." In addition to starting an internet business to supply internet to areas previously unserved, she states that "[a]fter Covid he hosted community meetings to discuss supporting the economy in the local area." *Id.* She also notes that Mr. Vaughn carries an assortment of tire changing tools in the back of his car for the express purpose of helping others he sees broken down by the side of the road. *Id.* Mr. Vaughn's thoughtfulness inspires her to be prepared to help others. *Id.*

Peyton Vaughn writes that his father "gives of his time, money, and energy, to raise a family, help others, and improve the local community in Centerville Tennessee." *Id.* He adds that Mr. Vaughn "has been my greatest mentor" and that his "children have all been good law-abiding citizens, and are producers in society. One is an EMT and firefighter, another is a volunteer firefighter." *Id.*

## II.     ADVISORY GUIDELINE RANGE

Mr. Vaughn previously filed objections to the presentence investigation report which he incorporates fully herein. In particular, Mr. Vaughn submits that the Probation Officer erred in applying a victim related adjustment, pursuant to U.S.S.G. §3A1.3, on the basis that the victim was a vulnerable victim. *See* PSR, ¶ 29. As shown in Vaughn's Position Regarding Presentence Report (DE 617), Patient A was not a vulnerable victim either because she was emotionally distraught or because she was pregnant. Furthermore, there was no evidence that Mr. Vaughn ever spoke to her or interacted with her in any way. There should be no vulnerable victim adjustment to the sentencing range.

The Government agrees with the Probation Officer, relying almost entirely on the determination by the District Court for the District of Columbia in *United States v. Handy*, 1:22-

cr-00096-CKK (D.D.C. May 13, 2024). (DE 624.) While *Handy* was a FACE case, it is distinguishable on its facts, involving individuals actually entering the clinic, a finding of violence resulting in an injury to a clinic employee, and was in any event mistaken on the law. The cases relied on by the court in *Handy* were distinguished in Mr. Vaughn's Position Regarding Presentence Report, and Mr. Vaughn submitted several additional cases on point which the Government did not even attempt to address. A finding of vulnerable victim is simply inappropriate here.

The Probation Officer calculated an advisory guideline range of 15 months to 21 months, resulting from a total offense level of 14 and Criminal History Category I. The guideline range should be disregarded here, however, because Mr. Vaughn is an excellent candidate for probation and any sentence of incarceration is far greater than necessary to promote the goals of sentencing in this case**.**

## III.    A SENTENCE OF PROBATION WOULD BEST SATISFY THE GOALS OF §3553(a).

According to 18 U.S.C. § 3553, the Court must "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2)," which are "the need for the sentence imposed:

(A)    to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
(B)    to afford adequate deterrence to criminal conduct;
(C)    to protect the public from further crimes of the defendant; and
(D)    to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner."

18 U.S.C. § 3553(a)(2). In "determining the particular sentence to be imposed," the Court must consider these purposes, the nature and circumstances of the offense and the history and characteristics of the defendant, the need to avoid unwarranted disparities, and the need to provide

18

restitution to any victims of the offense. *See* 18 U.S.C. § 3553(a)(1)-(7).

No workable guideline could ever "account for many of the myriad factors that are properly considered in fashioning just sentences." *See United States v. Ovid, slip op*., 2010 WL 3940724, *1 (E.D.N.Y. 2010). A substantial variance is needed in this case because of the following mitigating factors, all of which are highly relevant to the purposes of sentencing and none of which are taken into account by the guideline range.

### A. The Abortion Clinic has Closed and the Laws of the State of Tennessee Now Criminalize the Practice of Abortion.

On March 5, 2021, when the events giving rise to this case occurred, the practice of abortion was protected under the Supreme Court's infamous *Roe v. Wade*[1] decision. But before the indictment was filed, on June 24, 2022, The Supreme Court reversed *Roe*, holding that the Constitution does not confer a right to abortion and returning the issue to the states. *Dobbs v. Jackson Women's Health Organization*, 597 U.S. 215 (2022). Once judgment was formally entered, Tennessee's "trigger law" went into effect, and abortion was effectively outlawed in the state.[2] In short order, the Carafem Health Center facility where the events herein occurred closed. *Seei,* e.g.*,* https://carafem.org/nashville-pause/ (euphemistically claiming it was "pausing" in-office appointments "due to the state's complete ban on abortion").

As a result, Mr. Vaughn, a Tennessean who has at all times material acted solely within Tennessee, stands guilty of obstructing access to a facility no longer extant and of opposing a practice that is now criminal, indeed a felony. *See*, *e.g.*, The Human Life Protection Act, Tenn

---

[1] 410 U.S. 113 (1973).

[2] The Human Life Protection Act, Tenn. Code Ann. § 39-15-213, criminalizes abortion and protects the unborn child "throughout the entire embryonic and fetal stages" all the way "from fertilization until birth."

Code Ann. § 39-15-213, "Criminal Abortion" (prohibiting the performing or attempting to perform an abortion and classifying any violation thereof as a Class C felony); *see also* Tenn. Code Ann. § 39-15-216, the Tennessee Heartbeat Bill (prohibiting abortions after a heartbeat is detected, typically around six weeks' gestation and classifying violation as a Class C felony). There is therefore no need to afford adequate deterrence or to protect the public from further "crimes" by Mr. Vaughn. While Mr. Vaughn does not seek to minimize the seriousness of the offense, he suggests that respect for the law is a nonfactor in light of the reversal of *Roe v. Wade*. Nor is there any need to provide Mr. Vaughn with any educational or vocational training, medical care, or the like. Thus, a sentence of probation would serve the purposes of Section 3553.

In fact, the recitation of the facts of this incident in the PSR are more remarkable for what they *do not* say than for what they *do* say. According to the PSR, Mr. Vaughn was present in the hallway before the facility opened, Mr. Gallagher "told" him and others that he (Gallagher) needed to know who was going to go to jail, Gallagher "announced" to Vaughn and others that he had two doors to block, Vaughn "alerted" Gallagher and others that the police were soon going to begin arresting some people (that is, Vaughn assisted the police by acting as their messenger), and that *Gallagher* "explained" to his Facebook audience that Vaughn was "engaging the police and 'trying to buy us as much time as we can.'" PSR, ¶3(a)-(f). Significantly, Mr. Vaughn himself never said anything suggesting his engaging with the police was a pretext; he never suggested or encouraged anyone to obstruct or violate the law; and he never obstructed or interfered with anyone himself. In short, the facts show that he was present and that he spoke with the police.

There was no mention of Mr. Vaughn being a part of any planning meetings; no testimony indicating that he was even present with any of the other defendants before the day of the event. In fact, even on the day of the event itself there was no evidence submitted to the effect that Mr.

20

Vaughn discussed strategy or advance planning. The bare mention by Mr. Gallagher was the extent of his alleged involvement in any grand strategy. These facts underscore that Mr. Vaughn was at most a bit player.

**B.** **Need for Just Punishment in Light of Seriousness of the Offense**.

The need for retribution is measured by the degree of "blameworthiness," which "is generally assessed according to two kinds of elements: the nature and seriousness of the harm caused or threatened by the crime; and the offender's degree of culpability in committing the crime, in particular, his degree of intent (*mens rea*), motives, role in the offense, and mental illness or other diminished capacity." Richard S. Frase, *Excessive Prison Sentences, Punishment Goals, and the Eighth Amendment: "Proportionality" Relative to What?,* 89 Minn. L. Rev. 571, 590 (February 2005). The Guidelines include none of the factors bearing on Mr. Vaughn's degree of culpability. As shown previously, Mr. Vaughn's role in the offense was minimal, he obstructed no one and interacted with no patient or clinic employee. His motive, at least according to his mother, was simply to assist the counselors in reaching out to abortion-minded women, not to obstruct or assist in obstructing anyone. His role as a messenger between the police and the pro-life group was actually commended by the police negotiator, not condemned.

Moreover, the underlying offense here is categorized as a Class A misdemeanor. It is almost universally recognized that "Class A misdemeanors are one of the least serious offenses prosecuted in federal court." *United States v. Dawson*, No. 1:22-CR-00107-SAB-1, 2022 WL 3327463, at *2 (E.D. Cal. 2022); *accord*, *United States v. Lambson*, No. CR 17-27-M-DLC, 2018 WL 443453, at *2 (D. Mont. 2018); *United States v. Fawster*, No. 1:12-MJ-364PAS, 2013 WL 4047120, at *4 (D.R.I. 2013); *United States v. Montecalvo*, 861 F. Supp. 2d 110, 115 (E.D.N.Y. 2012); *United States v. Nash*, No. 2:08-MJ-00678-RJJ-RJ, 2010 WL 702438, at *2 (D. Nev. Feb.

21

19, 2010).

**C.    Need for Deterrence.**

Research has consistently shown that while the certainty of being caught and punished has a deterrent effect, "increases in severity of punishments do not yield significant (if any) marginal deterrent effects." Michael Tonry, *Purposes and Functions of Sentencing*, 34 Crime & Just. 1, 28 (2006). "Three National Academy of Science panels ... reached that conclusion, as has every major survey of evidence." *Id*.; *see also* Zvi D. Gabbay, Exp*loring the Limits of the Restorative Justice Paradigm: Restorative Justice and White Collar Crime*, 8 Cardozo J. Conflict Resol. 421, 447048 (2007) ("certainty of punishment is empirically known to be a far better deterrent than its severity").

Typical of the findings on general deterrence are those of the Institute of Criminology at Cambridge University. *See* Andrew von Hirsch, *et al*., *Criminal Deterrence and Sentence Severity: An Analysis of Recent Research* (1999). The report, commissioned by the British Home Office, examined penalties in the United States as well as several European countries. *Id*., at 1. It examined the effects of changes to both the certainty and severity of punishment. *Ibid*. While significant, "correlations between sentence severity and crime rates ... were not sufficient to achieve statistical significance." *Id*. at 2. The report concluded that "the studies reviewed do not provide a basis for inferring that increasing the severity of sentences is capable of enhancing deterrent effects." *Id*. at 1.

According to "the best available evidence, ... prisons do not reduce recidivism more than noncustodial sanctions." Francis T. Cullen, *et al., Prisons Do Not Reduce Recidivism: The High Cost of Ignoring Science*, 91 Prison J. 48S, 50S-51S (2011).

Moreover, as shown above, the need for deterrence here is virtually nonexistent in light of

22

the closure of the facility and the fact that Tennessee law now bans all abortions. There is no suggestion that Mr. Vaughn has or ever would travel out of state to engage in similar behavior. This factor, like all the others, weighs in favor of a sentence of probation.

### D. Need to Avoid Unwarranted Disparities and Unwarranted Similarities.

The Court must consider the need to avoid unwarranted disparities among defendants with similar criminal histories convicted of similar criminal conduct. 18 U.S.C. § 3553(a)(6). The Court should avoid unwarranted similarities in sentencing among defendants who are different in ways not accounted for in the guideline range, see *Gall*, 552 U.S. at 55 ("need to avoid unwarranted similarities among other co-conspirators who were not similarly situated"); *United States v. Ovid*, 2010 WL 3940724 (E.D.N.Y. 2010) (sentencing two defendants with similar guideline ranges to 60 months and 126 months respectively based on distinctions in circumstances of the offenses and characteristics of the Defendants), and unwarranted differences among defendants whose conduct and characteristics are similar. *See United States v. Parris*, 573 F. Supp. 2d 744, 753, 756-62 (E.D.N.Y. 2008).

Here, Probation is recommending a sentence between 15 months and 21 months. Mr. Vaughn's conduct and unique circumstances, as compared to the sentences other defendants have received, warrants a sentence pf probation with community service.

## IV. CONCLUSION

Mr. Vaughn is a valuable and respected member of his community who has sacrificed over and over again for the betterment of his fellow man. As reflected in the numerous and exceedingly complimentary letters of support submitted herewith, it would be a travesty to imprison Mr. Vaughn for his participation in the events of March 5, 2021. A sentence of probation with community service would be sufficient to satisfy the purposes of the sentencing statutes. Anything

23

more would be excessive and counterproductive for all involved.

Respectfully submitted,

/s/ *Stephen M. Crampton*
STEPHEN M. CRAMPTON
Thomas More Society
P.O. Box 4506
Tupelo, MS  38803
(662) 255-9439
scrampton@thomasmoresociety.org

and

LARRY L. CRAIN, Esq.
5214 Maryland Way, Suite 402
Brentwood, TN  37027
(615) 376-2600
larry@crainlaw.legal
www.crainlaw.legal

*Attorneys for Paul Vaughn*

## CERTIFICATE OF SERVICE

I hereby certify that on this 25th day of June, 2024, a true and exact copy of the foregoing

Sentencing Memorandum was served on all parties of record via the CM/ECF electronic filing

system. I further certify that a true and exact copy of the foregoing was served via email on the

United States Probation Officer on June 25, 2024.

/s/Stephen M. Crampton
Stephen M. Crampton